UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| WILLIAM REID, ) | |
| ) | |
| Plaintiff, ) | Civil No. 13-36-ART |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, William Reid, brought this action under 42 U.S.C. §§ 405(g)[1] and 1383(c)(3) to obtain judicial review of the Commissioner's decision to deny him disability insurance benefits. R. 1 at 1. Because substantial evidence in the record supports the Administrative Law Judge's decision, Reid's motion for summary judgment, R. 9, is denied and the Commissioner's motion for summary judgment, R. 10, is granted.

## BACKGROUND

Reid filed an application for disability insurance benefits on January 31, 2008. R. 7-1 at 214 (Admin. Tr. at 210 [hereinafter Tr.]). To receive disability benefits, an applicant must have "insured status," which he attains by meeting a statutory earnings requirement. *See* 42 20 C.F.R. § 404.101 *et seq.*; Social Security Administration, Program Operations Manual System RS 00301.101, https://secure.ssa.gov/poms.nsf/lnx/0300301101. Since Reid's insured status expired on March 31, 2007, he had to establish that he became disabled on or

---

[1] Reid cited 42 U.S.C. § 405(a) in his complaint, R. 1 at 1, but section 405(g) is the proper basis for the Court's jurisdiction over this matter.

before that date to qualify for benefits. R. 7-1 at 21 (Tr. at 17). Reid claimed that he has been unable to work since May 15, 2001. R. 7-1 at 21 (Tr. at 17). His alleged disabilities include problems with his left knee, left shoulder, and back; carpal tunnel syndrome; hypertension; and obesity. *Id.* at 23–24 (Tr. at 19–20). After the Social Security Administration denied Reid's application, *id.* at 123 (Tr. at 119), 127 (Tr. at 123), Reid requested a hearing before an Administrative Law Judge (ALJ). *Id.* at 131 (Tr. at 127). The ALJ also denied Reid's claim. *Id.* at 105 (Tr. at 101). Upon remand from the Appeals Council, *id.* at 119 (Tr. at 115), the ALJ conducted a second hearing on August 8, 2011. *Id.* at 21 (Tr. at 17).

Applying the five-step sequential evaluation process used in Social Security decisions, *see* 20 C.F.R. § 404.1520; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003), the ALJ once again concluded that Reid did not qualify for disability insurance benefits between his alleged disability onset date in 2001 and his insured status expiration date in 2007. R. 7-1 at 22–29 (Tr. at 18–25). First, the ALJ found that Reid had not engaged in substantial gainful activity during the relevant period. *Id.* at 23 (Tr. at 19). While Reid had continued to engage in fencing, shoveling, baling, and other farm work, the ALJ determined that this labor did not rise to the level of substantial gainful activity. *Id.* Second, Reid had severe impairments, namely (1) degenerative joint disease of the left knee status post two arthroscopic surgeries for anterior cruciate ligament repairs and meniscectomy; (2) status post left shoulder acromioplasty; (3) degenerative disc disease of the lumbar spine; (4) hypertension; and (5) mild obesity. *Id.* at 23–24 (Tr. 19–20). Third, Reid's impairments did not meet or equal one of the Commissioner's listed impairments. *Id.* at 24 (Tr. at 20).

2

Fourth, Reid retained the residual functional capacity to perform a reduced range of light work through his insured status expiration date, although he was unable to perform any of his past relevant work. *Id.* at 24–27 (Tr. at 20–23). Finally, given Reid's age, education, work experience, and residual functional capacity, the ALJ found that he could have performed jobs that existed in significant numbers in the national economy. *Id.* at 27–28 (Tr. at 23-24).

The ALJ therefore determined that Reid was not disabled for the purposes of disability insurance benefits during the relevant period. *Id.* at 29 (Tr. at 25). The Appeals Counsel denied Reid's request for review of the ALJ's decision, *id.* at 5 (Tr. at 1), and Reid filed his complaint in this Court, R. 1.

## DISCUSSION

Reid raises several issues in his motion for summary judgment: (1) whether the ALJ gave appropriate weight to the opinion of the treating physicians and included adequate reasoning on this subject in his decision; (2) whether the ALJ sufficiently considered the combined effects of Reid's impairments; (3) whether the ALJ considered the durational requirement of substantial gainful activity; and (4) whether a reasonable person could conclude that Reid is not disabled in light of the total medical evidence. R. 9-1 at 1–2.

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (articulating the same standard for judicial review by the court of appeals). Substantial evidence means "more than a scintilla of evidence but less than a

3

preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the evidence and the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The ALJ's decision survives such review.

I.   **The ALJ's Decision To Discount the Medical Opinions of Drs. Cervoni and Picon**

Reid alleges that the ALJ's decision improperly discounted medical opinions rendered by two of his treating physicians, Dr. Thomas Cervoni and Dr. Dora Picon. R. 9-1 at 1–2. Generally speaking, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [consistent with] other substantial evidence" must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give a treating physician's opinion controlling weight, he must do two things. First, he must provide "good reasons" for why the treating physician's opinion does not deserve controlling weight. *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (noting that an ALJ must provide "good reasons for not giving weight to a treating physician in the context of a disability determination" (internal quotation marks omitted)). Second, he must explain what weight, if any, the treating physician's opinion does deserve. *See* 20 C.F.R. § 404.1527(c)(2). The relevant factors are the length, frequency, nature, and extent of the treatment relationship; the evidence supporting the opinion; the consistency of the opinion with the records as a whole; and the physician's specialization.

4

*Id.* § 404.1527(c)(2)–(c)(6); *see also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While an ALJ must consider all of these factors, he need not provide "an exhaustive factor-by-factor analysis" in his decision. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

The ALJ in this case gave good reasons for why he assigned less than controlling weight to Dr. Thomas Cervoni's opinion of Reid's residual functional capacity. Dr. Cervoni began treating Reid in 1999 for knee, shoulder, and back problems. R. 7-1 at 398 (Tr. at 394). On March 28, 2009, Dr. Cervoni evaluated Reid's residual functional capacity. *Id.* at 518-22 (Tr. at 514–18). Dr. Cervoni opined that Reid could walk fewer than three blocks without rest and could sit or stand for no more than thirty minutes continuously. *Id.* at 519 (Tr. at 515). In an eight-hour working day, Reid could stand or walk for about two hours and sit for at least six hours. *Id.* at 520 (Tr. at 516). According to Dr. Cervoni, Reid required a job that permitted him to shift positions at will, and he needed to take unscheduled breaks intermittently during the workday. *Id.* He could lift ten pounds frequently and twenty pounds occasionally; reach his arms fifty percent of the time; stoop for twenty-five percent of the workday; and crouch at no time. *Id.* at 521 (Tr. at 517). Dr. Cervoni estimated that Reid would miss work more than four times a month as a result of his impairments. *Id.*

The ALJ found these limitations unsupported by the record before March 31, 2007. *Id.* at 26 (Tr. at 22). First, the ALJ noted that Dr. Cervoni's assessment occurred over two years after Reid's insured status expiration date and that Reid's physical condition had changed substantially during that period. *Id.* Dr. Cervoni stated in June 2007, just after the insured status expiration date, that Reid had a full range of motion in his right knee and

5

active range of motion in his left knee and that he hoped to "postpone the need for a total-knee arthroplasty for several years." *Id.* at 26 (Tr. at 22); *id.* at 392 (Tr. at 388). By July 2008, however, Reid required a total-knee replacement. *Id.* at 26 (Tr. at 22); *id.* at 71 (Tr. at 67). Dr. Cervoni did not write his report until March 2009, well after Reid's further deterioration and additional surgery. This is, in itself, a good reason for discounting Dr. Cervoni's 2009 opinion: evidence of problems that developed after an applicant's insured status expiration date cannot support a finding of disability under the Social Security Act. *See, e.g.*, *Clendening v. Comm'r of Soc. Sec.*, 482 F. App'x 93, 95 (upholding an ALJ decision that rejected post-hoc medical opinions concerning the onset date of the plaintiff's disability).

Second, the ALJ cited contradictory evidence in the record indicating that Reid had been capable before March 31, 2007, of engaging in the type of physical activity that Dr. Cervoni's assessment proscribed. For example, Reid performed substantial work on his family farm; he tended livestock, fenced the property, shoveled, and baled hay. *Id.* at 26 (Tr. at 22); *see id.* at 399 (Tr. at 395). He went deer hunting as recently as 2004. *Id.* at 399 (Tr. at 395). And, in 2007, he received a clean bill of health when he applied for a commercial driver's license. *Id.* at 26 (Tr. at 22); *id.* at 482–83 (Tr. at 478–79). Third, the ALJ determined that the findings of state agency physicians who reviewed Reid's medical records were entitled to "significant weight" because they were consistent with other medical evidence in the record. *Id.* at 27 (Tr. at 23); *id.* at 431–38 (Tr. at 427–42). This too undermined the reliability of Dr. Cervoni's assessment, and, for these reasons, the ALJ did not grant Dr. Cervoni's opinion controlling weight.

The Court must next ask whether the ALJ described the weight he actually gave Dr. Cervoni's opinion, as required by 20 C.F.R. § 404.1527(c)(2). The ALJ did just that. He explicitly endorsed his earlier, vacated decision in this case to the extent that it assigned weight to Dr. Cervoni's assessment of Reid's residual functional capacity. R. 7-1 at 26 (Tr. at 22); *see also Cole*, 661 F.3d 931, 938 (stating that when an ALJ correctly determines the weight to give a treating physician's opinion in an earlier decision, he need not repeat his analysis in a subsequent decision). In that vacated decision, the ALJ gave "some weight" to Dr. Cervoni's opinion, but he rejected any part of it that conflicted with evidence that predated Reid's insured status expiration date. *Id.* at 112 (Tr. at 108). And, in the decision at issue here, the ALJ substantiated his skepticism of the relevance of Dr. Cervoni's 2009 opinion to Reid's condition in 2007 with additional evidence from the record. *Id.* at 26 (Tr. at 22). Thus, the ALJ appropriately fulfilled his duties under the regulations, and his decision is supported by substantial evidence.

Reid also takes issue with the ALJ's total rejection of Dr. Picon's diagnosis of carpal tunnel syndrome based on nerve conduction studies she performed on May 6, 2009. *See id.*; *id.* at 523–26 (Tr. at 519–22). But, substantial evidence in the record also exists to justify the ALJ's decision. Reid was not diagnosed with carpal tunnel syndrome before March 31, 2007. *See id.* at 26 (Tr. at 22). On this ground, the ALJ found that Reid's carpal tunnel syndrome was not a severe impairment during the relevant period. *Id*; *see also id.* at 120 (Tr. at 116) (remanding the case to the ALJ because his first opinion erroneously considered carpal tunnel syndrome a severe impairment during the relevant period). Once again, evidence of impairment that postdates an applicant's insured status expiration date typically

cannot justify a finding of total disability. *See, e.g.*, *Clendening*, 482 F. App'x at 95. Thus, the ALJ gave no weight to Dr. Picon's report. *See* R. 7-1 at 26 (Tr. at 22). The ALJ properly discharged his duty as to Dr. Picon's report, *see* 20 C.F.R. § 404.1527(c), and there is substantial evidence in the record to confirm his finding.

## II.     The Combined Effect of Reid's Impairments

Reid's second objection to the ALJ's decision is that the ALJ did not consider whether the cumulative effect of his impairments was severe enough to render him disabled. R. 9-1 at 2. For this proposition, Reid cites *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992). R. 9-1 at 3. It is correct—as 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1523 mandate and *Walker* confirms—that an ALJ must consider the combined impact of impairments as part of the five-step sequential disability evaluation. *See Walker*, 980 F.2d at 1071. Still, Reid misunderstands the import of *Walker* and its relevance to his case.

*Walker* concerned a disability claim based on two impairments: a back injury and severe depression. *Id.* at 1067. Separately, neither impairment could justify a finding of disability. *Id.* at 1069. A vocational expert testified that the two impairments collectively precluded the applicant from returning to the workplace. *Id.* at 1071. Still, the ALJ based his decision on medical evidence of each impairment in isolation and ruled that the applicant was not disabled. *Id.* On review, the United States Court of Appeals for the Sixth Circuit found that the ALJ had failed to consider the combined impact of the applicant's two impairments in violation of 20 C.F.R. § 404.1523. *Id.* at 1071.

8

The problem with Reid's argument is that the ALJ in this case made none of the *Walker* ALJ's fatal errors. First, the ALJ explicitly stated that Reid's "impairments *in combination*" were severe within the meaning of the Social Security Act. R. 7-1 at 24 (Tr. at 20) (emphasis added); *see also* 20 C.F.R. § 404.1523 (requiring an ALJ to consider the combined effect of impairments for the first time when determining whether an applicant's impairments are severe). Second, the ALJ considered the combined impact of Reid's impairments throughout the remainder of his analysis. *See* 20 C.F.R. § 404.1523 (providing that if an ALJ "do[es] find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process"). For instance, the combined impact was a factor in deciding whether Reid's impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* R. 7-1 at 24 (Tr. at 20) (adopting the discussion of the medical evidence of record in the ALJ's first decision in this case); *id.* at 110–11 (Tr. at 106–07) (specifically considering the combined impact of obesity and other impairments). Similarly, the ALJ's evaluation of Reid's residual functional capacity considered all of his impairments in tandem. *Id.* at 24–27 (Tr. at 20–23).

Most importantly, unlike the ALJ in *Walker*, the ALJ in this case permitted the vocational expert to consider the combined effect of Reid's impairments when inquiring whether jobs that Reid could have performed existed in significant numbers in the national economy. In *Walker*, the ALJ rejected testimony by the vocational expert concerning the combined impact of the applicant's impairments on his ability to work. *Walker*, 980 F.2d at 1071. In contrast, the ALJ in this case posed a series of hypothetical questions to the

vocational expert that incorporated all of Reid's physical limitations. R. 7-1 at 58–61 (Tr. at 54–57). The questions an ALJ asks a vocational expert can indicate that he adequately considered the combined effect of an applicant's impairments before reaching his decision. *See Catron v. Astrue*, No. 8-110-DCR, 2008 WL 4304502, at *5–*6 (E.D. Ky. Sept. 18, 2008). Here, the ALJ's questions—and the fact that he later adopted the vocational expert's assessment of Reid's job prospects, R. 7-1 at 28 (Tr. at 24)—demonstrate that he fully explored the cumulative impact of Reid's impairments.

### III. The Durational Requirement of Substantial Gainful Activity

Reid next questions whether the ALJ considered "the durational requirement of substantial gainful activity and not merely the ability to find a job and physically perform it." R. 9-1 at 2. At no point, however, does Reid develop the meaning of this statement or present evidence in support of his position. The Court's standing order for social security benefits cases prohibits plaintiffs from making general allegations without providing specific evidence for their claims. *See* R. 8 at 3–4 (The Court "will not formulate arguments on the parties' behalf," and parties must "provide the Court with specific page citations to the record to support their arguments."). Where a party has raised an argument "in the most skeletal way, leaving the court to . . . put flesh on its bones," the Court is justified in deeming the argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotation marks omitted); *see* R. 8 at 4 ("Failure to provide specific citations to the record may constitute grounds for denial of the motion.").

Even if Reid had properly developed this argument, it would not make any difference: this issue is not germane to his case. The first step of the five-step sequential evaluation used

in disability benefits cases is to inquire whether the applicant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571 *et seq.* The substantial gainful activity analysis does include some discussion of the duration of employment. *See, e.g.*, 20 C.F.R. §§ 404.1574(a)(1) (indicating that work an applicant stops abruptly due to his impairment is generally considered an unsuccessful work attempt); 404.1574a (prescribing when and how earnings will be averaged over an applicant's entire period of work). Regardless, none of this matters to the outcome of this case. Because the ALJ found that Reid did not engage in substantial gainful activity during the relevant period, R. 7-1 at 23 (Tr. at 19), and because neither the government nor Reid apparently contests this finding, there is no need to consider whether the ALJ properly considered a so-called "durational requirement" in his substantial gainful activity analysis.

### IV. Could a Reasonable Person Conclude that Reid Is Not Disabled?

Reid's final request is that the Court decide whether "a reasonable person could conclude and justify that plaintiff is not disabled in light of the substantial limitations assigned by the treating physician, supported by overwhelming evidence of a lifetime of such difficulties and further evaluation of the consultative physician." R. 9-1 at 2. This, unfortunately for Reid, is not the inquiry the Court must make. When reviewing social security disability determinations, the Court asks only whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. For the

reasons described above, the ALJ's decision in this case applies the correct legal standards and makes factual findings underwritten by substantial evidence in the record.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) The plaintiff's motion for summary judgment, R. 9, is **DENIED**.

(2) The defendant's motion for summary judgment, R. 10, is **GRANTED**.

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously with this Memorandum Opinion and Order.

(4) The Clerk shall **STRIKE** this case from the Court's active docket.

This the 25th day of June, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge